473 So.2d 1290 (1985)
CAMPUS COMMUNICATIONS, Inc., a Florida Corporation Not for Profit, Petitioner,
v.
DEPARTMENT OF REVENUE, STATE OF FLORIDA, Respondent.
No. 65786.
Supreme Court of Florida.
July 11, 1985.
Rehearing Denied September 5, 1985.
*1291 Lee S. Johnson, Jr. of Brown and Johnson, Gainesville, for petitioner.
Jim Smith, Atty. Gen. and Edwin A. Bayo, Asst. Atty. Gen., Tallahassee, for respondent.
Thomas R. Julin of Steel, Hector and Davis, and Richard J. Ovelmen, General Counsel, Miami, amicus curiae for The Miami Herald Pub. Co.
EHRLICH, Justice.
This case is before us to respond to a question certified by the district court to be of great public importance in Department of Revenue v. Campus Communications, Inc., 454 So.2d 30 (Fla. 1st DCA 1984). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
Campus Communications is a not-for-profit corporation which publishes The Independent Florida Alligator (The Alligator), a student-operated newspaper distributed free of charge in the Gainesville area. The Alligator was originally affiliated with the University of Florida, but the relationship was terminated in the 1970's and the corporation was created to continue publication independently. The newspaper is printed by a commercial printer who then sells the finished product to petitioner for distribution. In 1980, the Department of Revenue (DOR) assessed Campus Communications for sales taxes over the prior three years on these transactions between printer and publisher.
Campus Communications sought review of the assessment within the DOR. Failing to receive relief there, the publisher challenged the assessment in circuit court. The trial judge granted The Alligator's motion for summary judgment. The DOR appealed the decision to the First District Court of Appeal.
The DOR position throughout this case has been that The Alligator is not exempt from sales tax because it fails to meet the criteria for exemption established by Florida Administrative Code Rule 12A-1.08. The district court rejected The Alligator's argument that the rule is an invalid exercise of delegated legislative authority, holding that it was bound to follow its decision in North American Publications, Inc. v. Department of Revenue, 436 So.2d 954 (Fla. 1st DCA 1983), review denied, 449 So.2d 265 (Fla. 1984), wherein the court had held the rule valid. However, the court noted that The Alligator was clearly a "newspaper" despite its failure to meet the criteria of the rule, and questioned whether it was proper to deny the tax exemption. It certified the following question to this Court:
Is Rule 12A-1.08, Fla. Admin. Code, which requires taxation of all publications which are not sold but are given away, unconstitutional as applied to The Alligator and similarly situated school publications?
454 So.2d at 31.
We answer the question in the affirmative, to the extent that an invalid exercise of delegated authority may be viewed as an unconstitutional act.[1] We do *1292 not reach the first amendment and equal protection issues raised by the parties.

THE STATUTES
Florida's sales tax is imposed by chapter 212, Florida Statutes (1983). Section 212.05, embodies the basic statement of legislative intent:
It is hereby declared to be the legislative intent that every person is exercising a taxable privilege who engages in the business of selling tangible personal property at retail in this state... . For the exercise of such privilege, a tax is levied on each taxable transaction ... [a]t the rate of 5 percent [a percent for the period at issue here] of the sales price of each item or article of tangible property when sold at retail in this state....[2]
A "sale" means "[a]ny transfer of title or possession, or both,... in any manner or by any means whatsoever, of tangible personal property for a consideration." § 212.02(2)(a). A "retail sale" or "sale at retail" is defined as "a sale to a consumer or any person for any purpose other than for resale in the form of tangible personal property and includes all such transactions that may be made in lieu of retail sales or sales at retail." § 212.02(3)(a). Certain exemptions to the tax are made in section 212.08 which reads, in part:
The sale at retail, the rental, the use, the consumption, the distribution and the storage to be used or consumed in this state of the following tangible personal property are hereby specifically exempt from the tax imposed by this chapter.
... .
(6) EMEMPTIONS: POLITICAL SUBDIVISIONS, COMMUNICATIONS.  There are also exempt from the tax imposed by this chapter sales made to the United States Government, the state, or any county, municipality, or political subdivision of this state.... Likewise exempt are newspapers; film rentals when an admission is charged for viewing such film; and charges for services rendered by radio and television stations... .[3]
The statutory scheme therefore provides that when there is "a transfer of title or possession ... for a consideration... . to a *1293 consumer or any person for any purpose other than for resale" of tangible personal property denoted as "newspapers," that transaction is exempt from the sales tax.

THE RULE
The Department of Revenue is delegated the power to enforce chapter 212, including the authority "to make, prescribe and publish reasonable rules and regulations not inconsistent with this chapter, or the other laws, or the constitution of this state, or the United States, for the enforcement of the provisions of this chapter and the collection of revenue hereunder, and such rules and regulations shall when enforced be deemed to be reasonable and just." § 212.17(6). In attempting to implement the statutory exemption for newspapers, the DOR adopted Florida Administrative Code Rule 12A-1.08, the relevant portions of which follow:
12A-1.08 Newspapers, Magazines and Periodicals.
(1) Receipts from the sale of newspapers are exempt... .
(3) In order to constitute a newspaper, the publication must contain at least the following elements:
(a) It must be published at stated short intervals (usually daily or weekly).
(b) It must not, when successive issues are put together, constitute a book.
(c) It must be intended for circulations among the general public.
(d) It must have been entered or qualified to be admitted and entered as second class mail matter at a post office in the county where published.
(e) It must contain matters of general interest and reports of current events. If the publication is devoted primarily to matters of specialized interests such as legal, mercantile, political, religious or sporting matters, and it contains in addition thereto general news of the day, information of current events and news of importance of current interest to the general public, it is entitled to be classed as a newspaper.
(4) To qualify for exemption as a newspaper, a publication must be sold and not given to the reader free of charge. So-called newspapers which are given away for advertising and public relations purposes are taxable.
The Alligator fails to meet this administrative definition of "newspaper" on two counts; it has no second class mailing permit, and it is not sold, but is given free of charge to its readers. Rule 12A-1.08(3)(d) & .08(4). It is the free distribution of The Alligator which is the fatal-flaw of the newspaper on both counts, since a second class mailing permit is available only to newspapers with a paid circulation under postal regulations.[4]

ANALYSIS
A sales tax is an excise tax. An excise tax is "an indirect tax levied somewhere in the chain of manufacture and distribution." Rutledge v. Chandler, 445 So.2d 1007, 1009 (Fla. 1984). An excise tax is a tax on the exercise of a privilege. City of DeLand v. Florida Public Service Commission, 119 Fla. 804, 161 So. 735 (1935). The sales tax is a tax upon the exercise of the privilege of engaging "in the business of selling tangible personal property at retail in this state." § 212.05, Fla. Stat. The sales tax is levied at the point when "a sale [is made] to a consumer or any person for any purpose other than for resale." § 212.02(3)(a).
The DOR argues that, because The Alligator is given away, the purchase from the printer is not for resale, and therefore is, for tax purposes, a taxable sale. A publisher who sells his newspaper to readers is clearly exempt under the statute. Because he sells the newspaper, the DOR *1294 allows the publisher to have a dealer's certificate of registration which permits the publisher to issue resale certificates. Fla. Admin. Code Rule 12A-1.38. A resale certificate is presented to a seller and allows a purchaser to avoid payment of a sales tax, since the sales tax will ultimately be levied at the point the purchaser, or a subsequent exempt purchaser-for-resale, resells the item purchased or a product containing the item purchased as a component part. The publisher of a for-sale newspaper thus may purchase his newspapers from a printer, or the ink and paper and other component parts for his own printing presses, free of sales tax. Fla. Admin. Code Rule 12A-1.28.
In attempting to impose this scheme of certification upon a variant situation, the DOR has produced an outcome inconsistent with legislative intent. The Alligator, because it is given away, cannot get a dealer's certificate of registration, and thus cannot present a resale certificate to the printer to avoid paying a sales tax.
What the DOR fails to recognize is that the transaction between printer and publisher is exempt, provided that The Alligator is a newspaper. For newspapers are exempt from the sales tax imposed when "a sale [is made] to ... any person for any purpose other than for resale." § 212.02(3)(a) (emphasis added). The Alligator purchased a completed product from the printer, and if that product was a newspaper, then the transaction was exempt.
This view was adopted by the Supreme Judicial Court of Massachusetts in Greenfield Town Crier, Inc. v. Commissioner of Revenue, 385 Mass. 692, 433 N.E.2d 898 (1982). Massachusetts statutes specifically exempted "newspapers" from the state sales tax. The Commissioner of Revenue argued that the sale of a completed product from printer to publisher was not exempt because the product was not a "publication" in the sense that it was not published until distributed to the reading public. The Commissioners relied on Jefferson Publishing Corp. v. Forst, 217 Va. 988, 234 S.E.2d 297 (1977). However, Virginia law exempted "publications" and the Town Crier court correctly concluded that, while the sale of a newspaper from printer to publisher might not be the sale of a "publication," it was the sale of a newspaper. "[T]he fact that a newspaper is not a `publication' until it is published does not support the conclusion that a paper, which is a `newspaper' upon publication is anything less than a `newspaper' before publication." 385 Mass. at 695-96, 433 N.E.2d at 900.[5] As in Massachusetts, Florida exempts "newspapers," and, to borrow from Gertrude Stein, a newspaper is a newspaper is a newspaper.
The remaining question is whether The Alligator is a "newspaper" within the meaning of the statutory exemption.
The DOR argues that its administrative definition of "newspaper" in Rule 12A-1.08 complies with the legislature's understanding of the word. While chapter 212 provides no definition of the word, the DOR calls our attention to two statutory references: section 50.011  Whenever a legal notice is required to be published, such publication shall be "in a newspaper printed periodically ... entered or qualified to be admitted and entered as second-class matter at a post office in the county where published, for sale to the public generally...."; and section 165.031(9)  For the purposes of chapter 165, relating to formation *1295 of local governments, "`Newspaper of general circulation' means a newspaper ... readily available for purchase ... but does not include a newspaper ... that is given away primarily to distribute advertising." While the language of section 165.031(9) may demonstrate some legislative ambiguity regarding the nature of "shoppers" and other publications given away primarily to distribute advertising, it is clear from reading sections 50.011, 165.031(9), and 212.08(6) in pari materia that the legislature considers newspapers to constitute a broader class than simply those which are sold by collecting a payment from readers or which are eligible for second-class mailing privileges. If the legislature did not consider newspapers to be of a broader class, then it would have been unnecessary to include the limiting language in sections 50.011 and 165.031(9).
This Court has already had occasion to construe the newspaper exemption of chapter 212. In Gasson v. Gay, 49 So.2d 525, 526 (Fla. 1950), we adopted the lower court's holding that the exemption
had reference to the natural, plain and ordinary significance of the word newspaper  the understanding of the word newspaper in general and common usage... . Words of common usage, when used in a statute, should be construed in their plain and ordinary signification and not in a technical sense....
The DOR urges that the "plain and ordinary significance" test serves only as a secondary check to bar exemption in cases when a publication meets the requirements of its administrative definition but still is not a "newspaper." In other words, the DOR would have this Court consider its administrative test to be rebuttable by the "plain and ordinary significance" to deny exemption but never to allow exemption. While such a one-sided presumption may be proper in other contexts, it is not so here where the legislative intent to exempt "newspapers" would be thwarted if a newspaper were to be denied exemption.
In distinguishing between a newspaper and a shopper for purposes of the exemption, the question is whether the primary purpose of the publication is the dissemination of news or the advertising of business concerns. Green v. Home News Publishing Co., Inc., 90 So.2d 295 (Fla. 1956). We agree with the trial and district courts that The Alligator is a "newspaper" within the common sense of the word. Relevant factors supporting this conclusion include the not-for-profit status of Campus Communications, Inc.; the tradition of training student journalists as evidenced by The Alligator's origins as a school newspaper and its present status (a majority of the board of directors of Campus Communications must be students and the editorial staff, i.e. those who prepare the news content, is composed entirely of students); the inclusion of a broad range of news stories including staff-written and wire service material; and the relatively low percentage of space devoted to advertisements (under 55% during the period for which a tax was assessed, well below the national newspaper average of 63% cited by The Alligator).
We therefore hold that The Alligator is exempt as a newspaper under the provision of section 212.08. Rule 12A-1.08 fails to provide an exemption. Despite this failing, the Department of Revenue argues that Rule 12A-1.08 is a reasonable regulation implementing the intent of the legislature. Three decisions by the district courts have upheld the Rule against attacks upon subsections (3)(d) and (4), the second-class mailing and paid circulation requirements. North American Publications, Inc. v. Department of Revenue; Boca Raton Publishing Co. v. Department of Revenue, 413 So.2d 106 (Fla. 1st DCA 1982); Department of Revenue v. Skop, 383 So.2d 678 (Fla. 5th DCA 1980). However, in none of these cases was there an express finding that the publication denied exemption was a newspaper within the scope of the statutory intent, and in Skop the court specifically found the primary purpose of the publication to be advertising. The courts have thus, until now, never been presented with the issue presently before us. Deference to administrative constructions of statutes is proper, but prior deference does not dictate continued adherence when a subsequent challenge successfully demonstrates clear error. An administrative rule *1296 ultimately demonstrated to "enlarge, modify or contravene" a statute constitutes an invalid exercise of delegated legislative authority, State, Department of Business Regulation v. Salvation Limited, Inc., 452 So.2d 65, 66 (Fla. 1st DCA 1984), regardless of whether prior challenges, applying the rule to other facts, failed to show the deviation from the statute. See also, e.g., Department of Administration, Division of Retirement v. Albanese, 445 So.2d 639 (Fla. 1st DCA 1984).
The cases of Pedersen v. Green, 105 So.2d 1 (Fla. 1958), and State, Department of Health and Rehabilitative Services v. McTigue, 387 So.2d 454 (Fla. 1st DCA 1980), are examples of situations where administrative agencies went beyond their authority in enacting rules to implement statutes. In Pedersen, the statute exempted "feeds" from sales taxes. An administrative rule was adopted which restricted the exemption to feeds used for agricultural animals. The taxpayer objected to this restrictive definition and this Court agreed, finding the rule unreasonable and not within the intendment of the statute in that it unduly restricted the exemption granted "feeds" by the statute. 105 So.2d at 4.
In McTigue, a statute required lay midwife license applicants to provide a statement from a licensed physician attesting to the applicant's skill and competence. The administrative agency enacted a rule defining "physician" as a Florida physician and the Court held that "[b]y adding the requirement that the physician be a Florida physician the rule is an invalid exercise of delegated legislative authority because it modifies the statute by adding an additional criterion to be met by the applicant." 387 So.2d at 456. Likewise, in this case the Department has added the requirement that a newspaper have a paid circulation.
Rule 12A-1.08 therefore is void as an invalid exercise of delegated legislative authority insofar as it denies exemption to a free-distribution newspaper. This is not to say that the same rule may not withstand scrutiny, provided that some provision is made for a publication to rebut the presumption raised by the rule. The DOR's desire to distinguish between exempt newspapers and nonexempt shoppers and other advertising giveaways is proper. We merely hold that Rule 12A-1.08 fails to adequately make the distinction, and that some provision must be made to fully implement the intent of the legislature.
Accordingly, we quash the decision of the district court and remand the case for action in accord with this decision.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, ALDERMAN, McDONALD and SHAW, JJ., concur.
NOTES
[1] "It is axiomatic that an administrative rule cannot enlarge, modify or contravene the provisions of a statute. A rule which purports to do so constitutes an invalid exercise of delegated legislative authority." State, Department of Business Regulation v. Salvation Limited, Inc., 452 So.2d 65 (Fla. 1st DCA 1984) (citations omitted). See also Nicholas v. Wainwright, 152 So.2d 458, 460 (Fla. 1963) (when administrative rules conflict with the enabling act of the legislature, the statute controls). The axiom arises from art. II, § 3, Fla. Const., the separation of powers clause. If the legislature delegates certain authority to an administrative agency, the agency acts unconstitutionally if it attempts to "enlarge, modify or contravene" the grant of authority. The power to tax lies with the legislative branch. The legislature delegated to the DOR the authority to collect those taxes which the legislature, not the agency, imposes. No sales tax is legislatively imposed on the sale of newspapers. An agency may not impose a tax, by rule or in any other manner. If a rule implementing the taxation scheme taxes that which is exempt, then the rule is an unconstitutional, invalid exercise of delegated authority.

The district court obviously intended to raise the first amendment and equal protection issues in its question, but it is unnecessary to delve so deeply into the roots of constitutional law when a simple pruning of the leaves will suffice. Cf. State v. Tsavaris, 394 So.2d 418 (Fla. 1981) (the Court will not pass on a constitutional issue if the case may be decided on other grounds).
[2] The seller normally collects the tax. However, the buyer may be liable if it cannot prove it paid a tax, section 212.07(9), and so The Alligator would be liable for the alleged assessment.
[3] "Likewise exempt are newspapers" may not be taken to mean that, just as sales to governmental entities are exempt, so too sales to newspapers are exempt. The original codification of the Revenue Act of 1949, chapter 26319, Laws of Florida (1949), tracked the enacting statute exactly and included the newspaper exemption in a listing of miscellaneous exemptions: "Also exempted from the tax imposed by this chapter are fuels ... motor vehicles, ... cigarettes, alcoholic beverages [etc.]. Other exemptions are electric power or energy, ...; newspapers, film rentals... ." § 212.08(3), Fla. Stat. (1949). Clearly the intent of the newspaper exemption in 1949 was to exempt newspapers (i.e. tangible personal property denoted "newspapers") "from the tax imposed by this chapter." The exemption was moved to follow the governmental entity exemption and the "likewise exempted" preface was added in a recodification of chapter 212 in the 1957 statutory compilation. The new compilation did not reflect any legislative change regarding the newspaper exemption, so there is no basis for concluding that the present statutory language is intended to do anything more than what the original enacting statute did, exempt newspapers from the tax imposed by chapter 212. Sales to newspapers are free of tax by virtue of the retail certificate scheme discussed infra.
[4] We note that the postal regulation has been invalidated on constitutional grounds by at least one federal court. In The Enterprise, Inc. v. Bolger, 582 F. Supp. 228 (E.D.Tenn. 1984), the court presumed the publication in question was a newspaper, and concluded that the discrimination between paid-and free-distribution newspapers was arbitrary and capricious, in violation of the first amendment protection of free speech and the fifth amendment equal protection clause.
[5] Petitioner has also filed as supplemental authority Fairlawn Town Shopper, Inc. v. Director, Division of Taxation, 98 N.J. 64, 484 A.2d 659 (1984). The New Jersey court concluded that free-distribution publications are, in fact, "sold" to readers for purposes of the sales tax because consideration is paid for the publication. The consideration is the revenue paid by advertisers who, in effect, purchase the publications for distribution to readers, in the same sense a parent might pay for a car to be titled to his or her offspring. While this recognition of the economic realities is attractive, the ramifications of adopting such a rationale in this case extend far beyond what has been argued here. For instance, "shoppers" are currently taxed at the printer-publisher nexus. The Fairlawn Town Shopers rationale would raise serious questions regarding the propriety of taxing at that point, and would suggest the publisher-advertiser nexus is the more appropriate transaction to tax. The Town Crier rationale appropriately resolves the case sub judice, and we refrain from going further.