# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D18-1776
_____

PATRICIA PHILLIPS,

    Appellant,

    v.

LEON COUNTY PUBLIC WORKS
and PREFERRED GOVERNMENT
CLAIMS SOLUTIONS and MARY
ELIZABETH CRUICKSHANK,

    Appellees.

_____


On appeal from an order of the Judge of Compensations Claims.
John J. Lazzara, Judge.

Date of Accident: June 25, 2012.

July 9, 2019


PER CURIAM.

Patricia Phillips ("Claimant") appeals on procedural grounds the Judge of Compensation Claims' ("JCC") order denying, without hearing, her motion for sanctions under section 440.32(3), Florida Statutes (2017). Claimant alleges that the Employer/Serving Agent's (E/SA) attorney, Cruickshank, raised an improper and unfounded discovery objection in a motion for protective order. The JCC denied Claimant's motion for sanctions, finding: (1) the E/SA's motion for protective order was previously denied, in part;

(2) the motion for sanctions was untimely; and (3) did not comply with the procedural requirements of Florida Administrative Code Rule 60Q-6.125. Because we find the JCC's reasons for denial contrary to the statutory language of section 440.32(3) and based on an improper application of the administrative rule, we reverse and remand for a hearing on the merits.

I.

The underlying dispute here involved the amount of attorney's fees and costs payable to Claimant's attorney by the E/SA pursuant to a prior order. During discovery and in preparation for the deposition of the E/SA's expert, the Claimant's attorney, Porcher, sent a subpoena duces tecum to the expert, requesting documents related to the fee dispute. In response, attorney Cruickshank sent a proposed motion for protective order objecting to production of the requested documents. Porcher then sent an email to Cruickshank asking for a contact to resolve the dispute. Cruickshank did not respond to the email and filed the motion for protective order with the JCC. The motion asserted work product privilege concerning communications between herself and the expert "to the extent that [such documents] exist." Cruickshank attests she had "personally conferred or used good-faith efforts to confer with opposing counsel in an effort to resolve the issues." Porcher objected because, among other things, Cruickshank had not prepared a privilege log so that he could determine what documents existed and the specific reasons for the withholding. He further argued that, contrary to her certification, Cruickshank had made no good faith effort to contact him or to resolve the issue despite his attempts to do so.

At the hearing on the motion for protective order, Cruickshank argued that, "whether there are, or are not any documents" responsive to the subpoena, all such documents were privileged. The JCC denied the motion for protective order in part, allowing Cruickshank the opportunity to file a privilege log disclosing any documents withheld and to produce all others. Although the E/SA's expert witness was deposed almost immediately following the JCC's ruling, Cruickshank did not provide a privilege log to Porcher. When the parties convened for the deposition of the E/SA's fee expert, Cruickshank produced

2

several documents in response to the subpoena including a one-page letter between Cruickshank and the fee expert establishing a rate of pay per hour. No documents were identified to Porcher that were withheld as containing work product or other privileged information.

Several weeks later, the Claimant filed the subject motion for sanctions. The motion requested sanctions pursuant to section 440.32(3), which states:

> The signature of an attorney [on a pleading, motion, or other paper] constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . . If a pleading, motion, or other paper is signed in violation of this section, the [JCC] or any court having jurisdiction of proceedings, upon motion or upon its own initiative, shall impose upon the person who signed it an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

The E/SA argue that the motion for sanctions was untimely because the motion for protective order— the underlying basis for sanctions — had previously been ruled upon by the JCC. More specifically, because rule 60Q-6.125(4)(a) creates a 21-day "safe harbor" period to allow for the withdrawal or correction of a sanctionable pleading, the Claimant's motion for sanctions, to be timely, had to be filed while the motion for protective order was pending. The JCC denied the Claimant's motion for sanctions finding that the E/SA's motion for protective order was denied, in part, and the motion for sanctions was untimely and noncompliant with rule 60Q-6.125. In a motion for rehearing, the Claimant

3

asserted, among other points, that section 440.32(3) is not a prevailing party provision and that the JCC's description of the ruling on the motion for protective order "did not tell the whole story" as Cruickshank was instructed by the JCC to prepare a privilege log which she did not do. The Claimant also reiterated that the motion for sanctions was not untimely under section 440.32(3), and an evidentiary hearing was necessary so that the claim for sanctions could be heard on its merits. Finally, the Claimant argued that if rule 60Q-6.125(4)(a) applied, Cruickshank was required to take some type of corrective action under the 21-day safe harbor provision despite the non-pendency of her motion for protective order. The JCC entered an order which denied the Claimant's motion for rehearing and instructed counsel for the parties to re-read The Florida Bar Workers' Compensation Section Guidelines for Professional Conduct. This appeal followed.

## II.

Under the unambiguous language of section 440.32(3), sanctions are both mandatory and not subject to any specific time limitation other than the pendency of ongoing litigation. In sum, the plain language of the *statute* does not support the JCC's ruling that the motion for sanctions here was either (1) untimely or (2) unwarranted because the E/SA's motion for protective order was denied, only in part.

In making his determination, the JCC, however, also improperly applied the procedural requirements of rule 60Q-6.125(4)(a), which provides:

> A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subsection (2). It shall be served but shall not be filed unless the challenged paper, claim, defense, allegation, or denial is not withdrawn or appropriately corrected within 21 days after service of the motion. If warranted, the judge may award to the party prevailing on the motion the costs of the proceeding and attorney's fees incurred in presenting or opposing the motion.

4

The language of the rule not only makes sanctions discretionary, but also creates a 21-day safe harbor period within which an offending party or attorney may withdraw a pleading to avoid sanctions. *See Soca v. Advance Auto Parts*, 185 So. 3d 1258, 1259-60 (Fla. 1st DCA 2016).

The E/SA argues that, given the safe harbor provision, the order denying sanctions should be affirmed because neither withdrawal nor any other corrective action made sense after the motion to compel was adjudicated and was no longer pending. The Claimant responds that withdrawal was not unreasonable at the time the motion for sanctions was served because the order on the motion to compel was a non-final, interlocutory ruling; furthermore, other appropriate correction could include something as simple as an acknowledgement of a violation. While that may be true, we reverse because the safe harbor provision of the rule does not apply here.

Section (1) of rule 60Q-6.125 generally provides for the imposition of sanctions for violation of the rules or of any order of the JCC. Section (2) refers to representations to the JCC and sets forth a detailed description of specific conduct which reiterates and expands on some of the provisions of section 440.32(3). In fact, the rule is identified as an implementation of section 440.32 along with other statutory provisions. But, the rule clearly goes beyond the plain language of the statute because section (3) of the rule states that the JCC *may* impose sanctions upon a determination of a subsection (2) violation, and section (4) creates a safe harbor period allowing sanctions to be avoided completely.

"It is axiomatic that an administrative rule cannot enlarge, modify or contravene the provisions of a statute." *Campus Commc'ns, Inc. v. Dep't of Revenue*, 473 So. 2d 1290, 1291 n.1 (Fla. 1985) (quoting *State, Dep't of Bus. Regulation v. Salvation Ltd., Inc.*, 452 So. 2d 65, 66 (Fla. 1st DCA 1984)); *see also State Farm Fla. Ins. Co. v. Unlimited Restoration Specialists, Inc.*, 84 So. 3d 390, 394 (Fla. 5th DCA 2012). As a result, when an administrative rule conflicts with the enabling statute, the statute will control. *See, e.g., Fla. Dep't of Revenue v. A. Duda & Sons, Inc.*, 608 So. 2d 881, 884 (Fla. 5th DCA 1992) ("In the event of a conflict between a statute and an administrative regulation on the same subject, the

statute governs."); *Campus Commc'ns, Inc.*, 473 So. 2d at 1291 n.1 (citing *Nicholas v. Wainwright*, 152 So. 2d 458, 460 (Fla. 1963)).

The E/SA does not directly dispute the substantive nature of the safe harbor period created by the rule. Instead, it argues that the Claimant's proper remedy is a rule challenge under Chapter 120, and thus, the validity of the rule is not before this court. But, we previously rejected this argument in a similar situation explaining:

> Just as a court cannot give effect to a statute (or administrative rule) in any manner repugnant to a constitutional provision, so a duly promulgated administrative rule, although "presumptively valid until invalidated in a section 120.56 rule challenge," *City of Palm Bay v. State, Dep't of Transp.*, 588 So. 2d 624, 628 (Fla. 1st DCA 1991), must give way in judicial proceedings to any contradictory statute that applied.

*Willette v. Air Prods.*, 700 So. 2d 397, 398 (Fla. 1st DCA 1997) (rejecting argument that court lacked jurisdiction, in absence of rule challenge, to address validity of rule changing time deadline for providing workers' compensation benefits).

The statute also does not exempt from violation a person who is the prevailing party. The JCC assumed there can be no violation of section 440.32(3) if the offending party should prevail in any aspect of the pleading or motion. But, this is not evident from the statute. In fact, the statute would appear to include sanctions for pleadings, motions, or other papers that are interposed "*for any improper purpose*, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation," without regard to the actual merits or outcome. § 440.32(3), Fla. Stat. (2017) (emphasis added). Furthermore, in the event of a violation, sanctions are statutorily mandated. *Id.* ("If a pleading, motion, or other paper is signed in violation of this section, the [JCC] and any court having jurisdiction of proceedings, upon motion or upon its own initiative, *shall* impose . . . an appropriate sanction. . . .") (emphasis added). In some instances, the true extent of a violation may not be known until after a ruling on the pleading or motion. Here, the JCC permitted Cruickshank the additional opportunity to file a

privilege log in support of the objections. However, no privilege log was produced identifying any documents claimed to be protected. Cruickshank couched her objection in terms of possibility ("to the extent that [such privileged] documents exist"). But, this qualification would appear to go more to the merits of the alleged violation— not to the procedural requirements of rule 60Q-6.125(4)(a).

At the heart of the issue here is the tension between the statutory mandate to sanction all violations of section 440.32 and the 21-day safe harbor period created by rule 60Q-6.125(4)(a). The Claimant maintains that there is no conflict between the statute and rule if we reject the E/SA's pendency argument. However, reconciling the rule with the statute remains problematic if we do so because, the implication is that any offending party can violate the provisions of section 440.32(3) without the risk of sanctions, or— in the Claimant's words— "with impunity," if the pleading or motion is dispensed with quickly enough (e.g., adjudicated or withdrawn). To accept the E/SA's application of the rule, the mandatory sanctions for violations of section 440.32(3) become not only discretionary, but also completely avoidable.

We recognize that this Court in *Soca* addressed the correct interpretation of the safe harbor requirement under the rule and in the context of alleged violations of section 440.32. *See Soca*, 185 So. 3d at 1259. But, the parties there assumed that the administrative rule applied. As a result, the court's reference to rule 60Q-6.125(4)(a) as an implementation of section 440.32(3) is dicta. We now clarify that this rule does not apply to the extent its provisions contradict the plain language of the statute.

The sanction in 440.32(3) is a stand-alone statutory sanction by its text and history without regard to the rule. The statute itself contains no safe-harbor provision or forgiveness clause. There is no reasonable way to read the statute as imposing merely discretionary sanctions to violations or as allowing a skilled violator a 21-day grace period. The safe harbor of the rule cannot be viewed as a procedural amendment to the statute. Either section 440.32(3) provides a stand-alone basis for sanctions, not subject to the administrative rule, or the administrative rule should be interpreted harmoniously with the statutory language

of section 440.32(3). Should the JCC's denial be viewed as a true procedural denial, then the Claimant should have been allowed to correct the procedural deficiency. Thus, rule 60Q-6.125(4)(a) should not apply to the extent it precludes filing a motion for sanctions under the plain language of section 440.32(3).

We, therefore, REVERSE the JCC's denial of Claimant's motion for sanctions and REMAND for a hearing on the merits.

MAKAR, WINOKUR, and M.K. THOMAS, JJ., concur.

———————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————————

Randall T. Porcher of Morgan & Morgan, Tallahassee, for Appellant.

Mary E. Cruickshank of DuBois & Cruickshank, P.A., Tallahassee, for Appellees.

8